INHABITANTS OF MILFORD

*vs.*

BANGOR RAILWAY & ELECTRIC COMPANY.

104   233.
s106   316
s106   319.

Penobscot.   Opinion June 11, 1908.

*Case.   Assumpsit.   Concurrent Remedies.   Contracts.   Breach of Same.   Damages.*
*Water Company Liable for Loss to Municipality, When.   Degree of Care*
*Required of Water Company.   Private and Special Laws, 1891,*
*chapter 331; 1905, chapter 46.   Revised Statutes, chapter 4,*
*section 76; chapter 47.*

Case will lie concurrently with assumpsit for a breach of duty arising out of an express or implied contract.

In many cases where assumpsit is a concurrent remedy, case will also lie for a violation of the duty which the contractual relations of the parties involve.

Although assumpsit will usually lie for breach of a contract, yet an action on the case for the breach of the common law duty is oftener the better remedy.

When two parties have made a contract which one of them has broken, the damages which the other party ought to receive in respect of such breach of contract should be either such as may fairly and substantially be considered as arising naturally, i. e. according to the usual course of things from such breach of contract itself, or such as may reasonably be supposed to have been in contemplation of the parties at the time they made the contract, as the probable result of the breach of it.

In an action on the case brought by the plaintiff town against the defendant corporation to recover the value of the town hall and certain sidewalks and hose, the property of the town, which were destroyed by fire by reason of the alleged negligence of the defendant corporation in failing to perform its contract to supply through its pipes water of sufficient current, pressure and volume to extinguish fires within the range of its hydrants, it appeared, among other things, from the allegations in the plaintiffs' declaration that the defendant corporation entered into a contract with the plaintiff town whereby for the sum of $800 per year, it agreed to supply the plaintiff town with sixteen post hydrants and water for the same before the first day of August 1902; that it also agreed that said hydrants should have two nozzles and should be supplied with pipes at least four inches in diameter; that it also agreed that said hydrants should

be so placed that proper protection against fire should be secured; that it also agreed that the water works should be supplied by a pump or pumps of a capacity of not less than one million gallons per day; also that the defendant corporation engaged and became bound and obliged to furnish through its pipes and hydrants water of sufficient current, pressure and volume to extinguish fire within range of such hydrants, and especially and particularly fires originating in or communicated to the aforesaid building and property of the plaintiff town.

Upon demurrer to the declaration, with the right to plead anew, *Held:* (1) That upon proof of the facts stated in the declaration the defendant corporation would be liable to the plaintiff town in an appropriate action for the damages caused by its negligence in failing to perform a duty arising from its contractual relations with the plaintiff town. (2) That the plaintiff town was legally entitled to bring an action on the case to recover damages for the consequential injuries resulting from the negligent manner in which the defendant corporation performed a duty created by its express contract with the plaintiff town.

With respect to the issue presented in the aforesaid action for negligence, the defendant corporation was required to use ordinary care to maintain pipes and furnish water of the pressure and volume stipulated in its written contract. It was only required to exercise such prudence, vigilance and precaution as would meet the requirements of ordinary care according to the exigencies of the situation, having due regard to the nature and importance of the contract, the rights and interests of those to be effected by it and the manifest consequences of a failure to perform it.

On report. Demurrer overruled. Defendant to plead anew.

Action on the case brought by the inhabitants of the town of Milford against the defendant corporation to recover the value of the town hall and certain sidewalks and hose, which were the property of the municipality and were destroyed by fire in April 1905. It was alleged that this loss was caused by the negligence of the defendant corporation in failing to perform its contract to supply through its pipes water of sufficient current, pressure and volume to extinguish fires within the range of its hydrants.

The two counts especially relied upon by the plaintiff town were the second count in the original declaration and an "amended count," both of which appear in the opinion.

The defendant corporation filed a general demurrer to the declaration, with joinder by plaintiff town, and then by agreement the cause was reported to the Law Court for determination, with the stipulations that the case should "be heard by the Law Court on

declaration as amended, demurrer and joinder. If the demurrer is overruled, defendant shall have the right to plead anew ; if sustained, the plaintiff shall be nonsuited."

The case appears in the opinion.

*Louis C. Stearns, and Taber D. Bailey,* for plaintiffs.

*E. C. Ryder,* for defendant.

SITTING: WHITEHOUSE, SAVAGE, PEABODY, SPEAR, CORNISH, KING, JJ.

WHITEHOUSE, J. This is an action on the case brought by the Inhabitants of the town of Milford against the defendant corporation to recover the value of the town hall and certain sidewalks and hose, which were the property of the municipality and were destroyed by fire in April 1905. It is alleged that this loss was caused by the negligence of the defendant in failing to perform its contract to supply through its pipes water of sufficient current, pressure and volume to extinguish fires within the range of its hydrants.

A general demurrer to the declaration was filed by the defendant ; and it was stipulated by the parties that the cause should be heard by the Law Court on the amended declaration, demurrer and joinder, that if the demurrer was overruled the defendant should have the right to plead anew, and if sustained, the plaintiff should be nonsuited.

The two counts especially relied upon by the plaintiffs are the second count in the original declaration and the "amended count." The second count is as follows :

"Also for that there was on the 23rd day of July, A. D. 1891 a corporation called the Penobscot Water & Power Company, organized under the laws of Maine, among other things for the purpose of supplying towns and communities with water for domestic use and the extinguishment of fires, and said corporation then and there entered into a contract with the plaintiffs whereby for the sum of $800 per year it agreed, among other things, to supply the plaintiff with sixteen post hydrants, and water for the same before the first day of August, 1892 ; it also agreed that said hydrants would

have two nozzles and should be supplied with pipes at least four inches in diameter, and that said hydrants should be so placed that proper protection against fire should be secured; it was also agreed that the water works to be established under the contract should be supplied by a pump or pumps of a capacity of not less than one million gallons per day; and the plaintiffs say that said hydrants were erected according to contract and that they ever paid the sum of $800 per annum to the said Penobscot Water and Power Company; and the plaintiffs say that said Penobscot Water & Power Company assigned said contract, by its deed in writing, with all its property and franchises, to a corporation called Public Works Company, organized under the laws of Maine and having its principal place of business in Bangor in said County, whereupon the Public Works Company maintained said hydrants and supplied them with water and the plaintiffs paid them by and after the same rate of $800 per year for the use of the same until the 7th day of April, 1905; on said 7th day of April the Public Works Company, by its deed in writing duly executed, assigned and delivered to a corporation called Bangor Railway & Electric Company, the defendant, all its property and franchises including said contract, whereupon the said Bangor Railway & Electric Company undertook to maintain said mains and hydrants and assume control thereof and to supply the same with water and the plaintiffs say that they paid the said company up to and beyond the 28th day of April, 1905, for the use of said hydrants by and after the rate of $800 per year, in accordance with the terms of their contract with the Penobscot Water & Power Company, and now the plaintiffs say that by reason of the premises and the matters hereinbefore stated the defendant was bound and obliged and owed the duty to maintain said hydrants with a supply of water therein for the extinguishment of fires in the town of Milford, and particularly for the extinguishment of fires communicated to the property of the inhabitants of said town as a corporation; and the plaintiffs further say that on said 28th day of April they were the owners of a certain public building called a town hall, of the value of $5000, and of a certain large number of planks constituting a sidewalk of the value of $250, and a hose pipe

of the value of $250; now on said 28th day of April the defendant did not fulfil its duty and obligation to furnish water in said hydrants, but on the contrary wrongfully and negligently failed to supply said hydrants with water capable of use for the extinguishment of fires, and left the same empty and useless; and on said 28th day of April said building of the plaintiffs took fire and although the defendant's hydrants were in easy reach of said building they supplied no water, and albeit the plaintiffs used their utmost endeavor to extinguish said fire they failed because of the lack of water and pressure of water in said hydrant; and the building and the sidewalk and the hose aforesaid were utterly consumed, all which results were entirely due to the wrongful conduct of the defendent in not supplying water in said hydrants according to its obligation and duty."

The "amended count" is as follows:

"In a plea of the case, for that on the 28th day of April, A. D. 1905 the said inhabitants of Milford were the owners of a certain public building called a Town Hall, of the value of five thousand dollars, and certain planks and timbers constituting a sidewalk of the value of two hundred and fifty dollars, and certain fire hose of the value of two hundred and fifty dollars; and the plaintiffs aver that on said 28th day of April 1905 the defendant had engaged and was bound and obliged to furnish through its mains, conduits, pipes and hydrants, the same being laid and placed in the streets of said plaintiffs' town, water of sufficient current pressure and volume to extinguish fire within range of said hydrants, and especially and particularly fires originating in or communicated to plaintiffs said building and property, in consideration of the sum of eight hundred dollars per annum paid to it by said plaintiffs; Now the plaintiffs say that on said 28th day of April a fire started in a board pile at a considerable distance, to wit, a quarter of a mile, from plaintiffs said building and property, which said fire might easily have been extinguished and put out had there been any pressure and volume of water in said mains and hydrants, but the defendant unmindful of the duty and obligations in this behalf wrongfully, carelessly and negligently suffered and allowed said mains, pipes and hydrants to be destitute of any current of water of sufficient pressure,

force and volume to be of any value or utility in extinguishing said fire or any fire, so that the plaintiffs were unable by the use of the greatest diligence and the strongest efforts to quench the fire in said pile of boards, although they were in the use of due care in this behalf; and the plaintiffs aver that said fire in said board pile was communicated to the said buildings and property of plaintiffs by sparks, firebrands or cinders, so that the same were utterly burned and consumed, although hydrants were at hand and in close proximity to said buildings and property, and competent and capable men were at hand with suitable hose and appliances ready to extinguish the fires started by said cinders and firebrands upon plaintiffs said building and property and were prevented from doing so solely by the lack and want of water in said hydrants which it was the duty and obligation of said defendant to furnish. And the plaintiffs aver that the sole cause of the said loss and damage was the wrongful neglect of duty of said defendant, to the damage of said plaintiffs (as they say) the sum of six thousand dollars."

In support of the demurrer the following statement of the defendant's claims was presented as the basis of the argument in its behalf, viz:

"1. The Company does not agree to extinguish fires or to insure property against loss by fire. Its agreement is simply to furnish a water system and supply it with water. It is impossible to say that failure to furnish water was the proximate cause of the loss, and consequently no action can be maintained to recover for the loss of property by fire; the cause of the loss is too remote and the damages too uncertain to allow of a recovery.

"2. Damages must be such as were in contemplation at the time the contract was made. It cannot be claimed that it was the intention of the company to make good loss by fire for the small compensation which it received for installing its plant.

"3. In making a contract with a water company for the protection of property against fire, the town acts for the general public good. The town as a property owner derives the same benefit that every other property owner does. The contract does not protect any particular property, but is for the benefit of all.

"4.   If an action can be maintained it must be an action of assumpsit.   There is no statute or common law duty imposed upon the defendant to furnish water to the municipality.   The duty imposed grows out of the contract itself.   Recovery, if any there be, must be by virtue of the contract, and not on account of any legal duty independent of the contract."

The important question thus raised by the pleadings and contentions of the parties has never before been presented to this court, nor, so far as appears, has the precise question ever been directly involved and expressly determined in any jurisdiction, state or federal, in this country, the only analogous case cited by counsel being distinguishable from this in essential particulars.   There is no prevailing American doctrine upon the question and no precedent in this State that can in any way embarrass this court in its efforts to reach a solution of the problem that shall appear to be warranted by the well established and fundamental law of contracts, consonant with the principles of justice and sound reason and in harmony with the considerations of public policy involved in the inquiry.

The plaintiffs are a municipal corporation, and by sect. 76 of chapter 4, R. S., such corporations are empowered to "contract for a supply of water, gas and electric light for municipal uses upon such terms as may be mutually agreed   .   .   .   .   and may raise money therefor."   The plaintiff town of Milford was also specially authorized by chapter 331 of the Private and Special Laws of 1891, "to contract with the Penobscot Water and Power Company for a supply of water for municipal and sanitary purposes and for the extinguishment of fires," and it appears from the averments in the plaintiffs' declaration that the defendant corporation acquired all the powers, privileges and franchises and assumed all of the obligations of the Penobscot Water and Power Company.

It is provided by chapter 46 of the Private and Special Laws of 1905 that the defendant corporation "shall have, possess and enjoy all of the powers of a corporation formed under the provisions of chapter 47 of the Revised Statutes" of Maine, and it thus appears to have been invested with full power to make contracts and to sue and be sued.

It is not in controversy therefore that both of the parties to this suit were competent to enter into the contract set out in the plaintiffs' declaration. According to the allegations therein contained, the defendant entered into a contract with the plaintiffs whereby for the sum of $800 per year, it agreed to supply the plaintiffs with sixteen post hydrants and water for the same before the first day of August 1902; it also agreed that said hydrants should have two nozzles and should be supplied with pipes at least four inches in diameter, and that said hydrants should be so placed that proper protection against fire should be secured; it was also agreed that the water works should be supplied by a pump or pumps of a capacity of not less than one million gallons per day. The defendant also engaged and became bound and obliged to furnish through its pipes and hydrants water of sufficient current, pressure and volume to extinguish fire within range of such hydrants, and especially and particularly fires originating in or communicated to the plaintiffs' said building and property. The hydrants were duly erected and the plaintiffs paid to the defendant corporation the sum of- $800 per annum, in accordance with the terms of the contract up to and beyond the time of the fire in which the plaintiffs' property was destroyed.

Here then is a formal written contract entered into by parties competent to make it. It is not in controversy that it was complete, definite and certain; that it was free from misapprehension, fraud or mistake, and entirely fair and reasonable in all its parts. It was not characterized by any lack of mutuality either in the terms of the contract when made or in the remedies available to both parties. The plaintiffs had fully performed the contract on their part and it contains no clause or phrase that would afford the defendant any reasonable ground for claiming exemption either from the legal obligation or the moral duty of performing on its part a contract so manifestly indispensable to the protection of the plaintiffs' property and so vitally important to the welfare of the people. With respect to the issue presented in this action for negligence the defendant was required to use ordinary care to maintain the pipes and hydrants and furnish water of the current pressure and volume as stipulated

in its written contract.   It was only required to exercise 'such prudence, vigilance and precaution as would meet the requirement of ordinary care, according to the exigencies of the situation, having due regard to the nature and importance of the contract, the rights and interests of those to be affected by it, and the manifest consequences of a failure to perform it.   There is nothing in the contract to indicate and nothing in the situation of the parties to suggest that the performance of its duty would have been attended with any oppression or hardship on the defendant.

But the demurrer admits the truth of the plaintiffs' allegations that the defendant "wrongfully, carelessly and negligently suffered and allowed the mains, pipes and hydrants to be destitute of any current of water of sufficient pressure, force and volume to be of any value or utility in extinguishing said fire or any fire."   And the plaintiffs aver that the "sole cause of the said loss and damage was the wrongful neglect of duty of said defendant."

But it is suggested in behalf of the defendant that the corporation does not agree to extinguish fires or to insure property against loss by fire ; that its agreement is simply to furnish a water system ; that it is impossible to say that failure to furnish water was the proximate cause of the loss, and that damages can only be such as were in contemplation at the time the contract was made.

That the defendant did not agree to extinguish fires or to insure property against fire is unquestioned.   The statement is true but the argument is fallacious.   The conclusion which is evidently sought to be deduced, that the defendant is not liable for the damages resulting solely from a breach of its contract to furnish water to extinguish fires, does not necessarily follow.   A corresponding statement directing attention to the particular thing which the defendant agreed to do or not to do, could with equal propriety be made respecting every cause of indirect damages.   This method of reasoning obviously excludes from consideration the distinctive character of consequential damages for the breach of a contract, and hence affords no aid in determining the question of liability. In the leading English case of *Hadley* v. *Baxendale*, 9 Exch. 353, so often cited as authority in this country, the plaintiffs gave the

broken shaft of their mill to the defendant carrier to be forwarded immediately to an engineer to serve as a model for a new one. The delivery was delayed and the mill remained idle for want of the new shaft. The plaintiffs claimed damages for loss of profits while the mill was idle. The carrier only undertook to deliver the broken shaft immediately. He did not contract to provide a new shaft or to furnish business for the mill. But the familiar rule was then enunciated "that when two parties have made a contract which one of them has broken, the damages which the other party ought to receive in respect of such breach of contract should be either such as may fairly and substantially be considered as arising naturally, i. e. according to the usual course of things from such breach of contract itself, or such as may reasonably be supposed to have been in the contemplation of both parties at the time they made the contract, as the probable result of the breach of it." So in what has been termed the leading American case of *Griffen* v. *Colver*, 16 N. Y. 489, it was held that the plaintiff was entitled to damages for the loss of the ordinary rental of his mill, resulting from the breach of the defendants' contract to deliver a steam engine built for the purpose of running the mill. But the defendant did not contract to run the mill, or to supply business for it. He only agreed to deliver a steam engine to furnish power for it. The statement of the rule of damages is substantially identical with that in the English case of *Hadley* v. *Baxendale*, supra.

Equally pertinent illustrations are readily found in our own State. In *Grindle* v. *Eastern Express Company*, 67 Maine, 317, the plaintiff's intestate delivered $24.90 to the defendant Express Company, at Castine to be sent to Belfast to pay a premium on his life policy which by its terms would lapse in eight days if the premium was not paid. It was held that for failure to deliver the money according to its undertaking the defendant was liable for the net value of the policy on the day it lapsed, on the ground that both parties must be presumed to have contemplated such damages from a knowledge of the circumstances. But the defendant's only undertaking was to carry a package of money. See also *Frye* v.

*M. C. R. R. Co.*, 67 Maine, 414, and *McPheters* v. *Moose River Log Driving Co.*, 78 Maine, 329.

Further apposite illustrations are found in numerous cases involving facts more closely analogous to those at bar. In *Watson* v. *Needham*, 161 Mass. 404, the defendant town, acting through its water commissioners, undertook to furnish the plaintiff with water for use in a boiler to generate steam to heat his greenhouse, but omitted to use proper diligence to discover a leak in the main pipe and the plaintiff failed to receive a sufficient supply of water whereby his plants were damaged by freezing to the extent of $400. Here the defendant had not contracted to heat the plaintiff's greenhouse or to insure his plants against freezing; it had only contracted to furnish water to make steam. But the court held that subject to the right to shut off the water when necessary to make extensions and repairs, which had been expressly reserved, "the town was bound to use reasonable care and diligence to have ready for delivery a sufficient supply of water for the plaintiff's use so long as the contract remained in force." The plaintiff was accordingly allowed to recover the full amount of his damage by freezing.

In *Stock* v. *Boston*, 149 Mass. 410, a similar contract existed between the parties, and the plaintiff sustained damage by the freezing of his plants caused by the neglect of the defendant to furnish water according to the contract. It was contended in behalf of the defendant that the damage was too remote, but the court said that the defendant was "liable not only for those injuries which are caused directly and immediately by his act, but also for such consequential injuries, as according to the common experience of men, are likely to result from his act . . . . The true inquiry is whether the injury sustained was such as according to common experience and the usual course of events, might reasonably be anticipated." See also *Metallic C. C. Co.* v. *Fitchburg R. R.*, 109 Mass. 277; *Hand* v. *Brookline*, 126 Mass. 324.

The same doctrine is exemplified in *New Orleans & N. E. R. Co.* v. *Meridian Water Works Co.* in the Circuit Court of Appeals, 72 Fed. Rep. 227. This case is precisely analogous to the case at bar, being distinguishable only by the fact that the plaintiff in this

case is a railroad company instead of a municipal corporation.   In
the Federal case, the water company, in consideration of $1200 per
year, contracted to furnish the tanks and shops of the railroad com-
pany with a full and sufficient supply of water, "not less than 60
pounds pressure for all purposes for which water may be needed or
used at said shops," and as a part of this agreement the defendant
water company laid its pipes to the plaintiff's premises and attached
hydrants thereto to enable the plaintiff to run the water as a pro-
tection against fire, knowing that the railroad company had no other
available source of water supply and no other means of extinguishing
fires on its premises; but it was alleged in the declaration that the
plaintiff's shops and tanks were destroyed by fire in consequence of
the defendant's failure to furnish water at 60 pounds pressure.   It
was held that upon these facts the plaintiff was entitled to recover.
In the opinion the court say:   "The breach of contract occurred
when the defendant failed to furnish the plaintiff's servants with
an adequate supply of water at not less than 60 pounds press-
ure.   .   .   .   The plaintiff's declaration alleges that the proxi-
mate cause of its damages was not the fire but was in the fact of the
defendant's failure to furnish water at 60 pounds pressure.   If such
be the fact, the plaintiff's damages were not too remote or con-
sequential to be sustained by the law applicable to the facts, quot-
ing in extenso, the rule in *Hadley* v. *Baxendale*, 9 Exch. 341.

In *Knappman Whiting Co.* v. *Middlesex Water Company*, 64
N. J. L. 240 (45 Atl. 692) the Supreme Court of New Jersey on a
claim for recoupment set up in an action of contract, rigidly enforced
the obligations of the defendant's contract.   In that case the water
company in consideration of $600 per year, agreed to furnish the
plaintiff company with water "suitable for use in steam boilers and
with a pressure sufficient for fire purposes," but by reason of a leak
in the water main and the consequent failure of the company to
furnish water according to the contract, the plaintiff's factory was
destroyed by fire causing damage to the extent of $20,000.   In an
action of contract by the water company to recover the amount due
for water supplied, the plaintiff in error presented its claim for
recoupment based on the failure of the water company to perform

its agreement to supply water of sufficient pressure for fire purposes, and it was held that under such a clear and unqualified contract, the water company was liable for the damages sustained by the consumer from fire in consequence of a failure in the water pressure, though the failure was due to a break in its pipes without the water company's fault. In the opinion the court say, inter alia; "The principle underlying all these cases is that where the contract is express, as it is in this case,— to furnish water with a pressure sufficient for fire purposes,—to do a thing not unlawful, the contractor must perform it; and if, by some unforeseen accident, the performance is prevented, he must pay damages for not doing it. No distinction is made between accidents that could be foreseen when the contract was entered into and those that could not have been foreseen. Where, from the result of such an accident, one of two innocent persons must sustain a loss, the law casts it upon him who has agreed to sustain it, or, rather, leaves it where the agreement of the parties has put it, and will not insert, for the benefit of one of the parties, by construction, an exception which the parties have, either by design or neglect, omitted to insert in their agreement."

It will be perceived that in this action of contract the exercise of reasonable care and diligence by the water company was not made the criterion of its liability.

In *Skowhegan Water Company* v. *Skowhegan Village Corporation*, 102 Maine, 323, the competency of the parties to make a contract for a constant and ample supply of water "under sufficient pressure for the extinguishment of fires," and the obligation of the defendant to perform its contract were distinctly recognized. The water company brought suit to recover the rental stipulated in the contract, but the defendant contended that the plaintiff had failed to furnish water of sufficient pressure for the extinguishment of fires, and was therefore not entitled to recover the rental specified. The court sustained a verdict in favor of the defendant, saying in the opinion, "The plaintiff was entitled to recover the fair value of the service, having regard to the contract price and considering how much less the service was worth to the corporation by reason of the plaintiff's breach of the contract." . . . . "The question of

recoupment, properly so termed, is not involved.    But if the plain-
tiff's breach of the contract be such as to subject the defendant to
consequential damage, that may be the foundation for a legitimate
claim to recoupment with respect to which the burden of proof
would be upon the defendant."

The case of *Ukiah City* v. *Ukiah Water & Imp. Co.*, 142 Cal.
173, (75 Pac. Rep. 773) is cited by counsel for the defendant as a
"case on all fours" with the principal case, and as a direct author-
ity against the plaintiff's contention.    But as already suggested,
that case differs materially from this, and is legally distinguishable
from it.    In that case there was no express contract, written or
oral, between the defendant water company and the plaintiff town
respecting the quantity of water to be furnished or the manner and
means of furnishing it.    As stated by the court in the opinion
"the same relations existed between the town and the defendant as
to the furnishing of water for general fire purposes as ordinarily
exist between the private consumer and the water company as to
water for domestic purposes."    The water company had not agreed
to supply the town with any definite number of hydrants, or speci-
fied the number of nozzles for the hydrants, the diameter of the
pipes with which they should be supplied, or the manner in which
the hydrants should be placed to afford protection against fire.    It
had not agreed that its works should be supplied by pumps of any
stated capacity, or become bound to furnish through its pipes and
hydrants water of "sufficient current, pressure and volume to extin-
guish fire within the range of such hydrants," or made any special
reference to "fires originating in or communicated to" the property
of the municipality.    It was principally for want of a contract on
the part of the defendant water company to do any specific thing,
that judgment was given for the defendant.    After enumerating
the many cases in different jurisdictions in which it has been held
that a water company is not liable to individual owners of property
destroyed by fire by reason of its failure to perform its contract to
supply the town with sufficient water to extinguish fires, the opinion
proceeds to show that *Paducah Lumber Co.* v. *Water Co.*, 89 Ky.
34, (12 S. W. 445) and *Gorrell* v. *Water Co.*, 124 N. C. 328,

(32 S. E. 720) in which the opposite conclusion was reached, are to be distinguished from the California case against the Ukiah Water Company by reason of the fact that in the case of the Paducah Lumber Co. and in the Gorrell case, there was an express contract to do certain specific things, which appear to have been equivalent to the stipulations in the plaintiff's contract in the case at bar. The court further say : "In each of these cases it will be observed that the court was dealing with contracts whereby the water companies, for valuable concessions and exclusive privileges, had agreed to do and maintain certain specific things by way of protection from fire, and the gravamen of the charge against each and all of the companies was that they had violated their contract in failing to do the particular things for the doing of which they had expressly contracted. The broad distinction between those cases and the one at bar is, as pointed out in the opinion of the trial judge, that there is no express covenant in the contract between this plaintiff and this defendant, and the security to plaintiff's property was only the same security which in the exercise of its governmental functions the plaintiff had obtained for the whole town."

"Doubtless a water company may so bind itself by contract with a person to furnish him water for the extinguishment of fires as to render itself liable for the value of property of such person destroyed by fire by reason of its failure to furnish him a sufficient supply of water. . . . It may be assumed here that it is within the power of a municipality, as a property owner, to enter into such a contract with a water company for the protection of the property which it owns as a legal individual; but it certainly needs something more than evidence showing an accepted service for general fire purposes to establish such a contract, and the evidence here shows nothing more."

It has been seen that in the written contract as set out in the plaintiff's declaration in the case at bar, the defendant water company in consideration of $800 per annum, did expressly agree to furnish water for sixteen post hydrants which should have two nozzles each and be supplied with pipes four inches in diameter, and that its works should be supplied with pumps of a capacity of 1,000,000 gallons per day.

It also expressly "engaged" to furnish through its pipes and hydrants water of sufficient pressure and volume to extinguish fire within range of its hydrants "and especially and particularly fires originating in or communicated to the plaintiffs' said building and property." But instead of the pressure and volume specified, the plaintiffs allege that by reason of the defendant's negligence these pipes and hydrants had become destitute of any current of water of sufficient pressure and volume to be of any utility in extinguishing fires, and that this negligence on the part of the defendant was the sole cause of the plaintiffs' loss and damage.

The defendant corporation proceeded to construct and operate its plant and entered upon its public service and the performance of its contract. It well knew that the plaintiff town relying upon its express contract with the defendant would omit to make any other arrangements for the supply of water, or provide any other means for the extinguishment of fires. The defendant's servants did not need to be informed that the elaborate provisions of the contract respecting the supply of water through its hydrants were for the purpose of affording protection against the destruction of property by fire. They well knew the disastrous results likely to flow from any neglect on their part to perform the contract to furnish water of sufficient volume and pressure to extinguish fires. Under such circumstances damages from loss of property by fire are not only the natural consequences of the defendant's wrongful neglect but "such as may reasonably be supposed to have been in the contemplation of the parties at the time they made the contract as the probable result of the breach of it." The injuries sustained are manifestly such as, according to common experience and the usual course of events might reasonably be anticipated. Indeed it is impossible to conceive of any class of contracts, or of contracts relating to any subject matter, with respect to which the consequences of a breach are more palpably natural or more readily anticipated.

Under the stipulation in the report, the defendant is entitled to plead anew in the event that the demurrer is overruled. All of the other objections interposed by the defendant to the maintenance of

the action, involve a question of fact to be heard upon the trial of the cause. Whether the defendant's breach of duty in connection with the performance of its contract was culpable negligence, and if so whether such breach of duty on its part or "the negligence of the plaintiffs themselves, or the criminal act of a stranger, or an atmospheric condition" was the proximate cause of the plaintiffs' loss are questions not raised by the demurrer, but are determinable by the trial court. The solution of them may often be attended with difficulty, but there is no reasonable ground for apprehending that such difficulty will be essentially different from that experienced in numerous other cases of a similar character.

When therefore the established principles of law are applied to this case as to all others, and the contract between these parties is held to possess the binding force and efficacy of all other analogous contracts, the conclusion is irresistible that upon proof of the facts stated in the declaration the defendant would be liable to the plaintiffs in an appropriate action, for the damages caused by its negligence in failing to perform a duty arising from its contractual relations with the plaintiffs.

2. But the defendant further contends that the plaintiffs have misconceived their remedy and that if any action can be maintained it must be an action of assumpsit and not of tort.

It is the opinion of the court that this contention is not sustainable either upon reason or authority. As observed by the court in *Ashley* v. *Root,* 4 Allen, 504: "This is one of a numerous class of cases where a party may elect to sue either in contract or tort. At common law he might sue in assumpsit for breach of contract or in case for breach of duty." In that action a principal was allowed to recover in an action of tort against his agent for all the damage caused by a breach of duty by the agent including his neglect to pay over on demand money which he had collected as agent. Either case or assumpsit may also be supported for a false warranty in the sale of goods. *Mahurin* v. *Harding,* 28 N. H. 128, (8 Foster, 128). In the opinion the court say: "The warranty is none the less a contract because it is the means by which a fraud is accom-

plished and the fraud is in no way diminished because the seller has at the same time bound himself by a warranty."

In Am. & Eng. Encyc. of Law, (2nd Ed.) Vol. 28, page 625, it is said : "Case will also lie for a violation of the duty which the contractual relations between the parties involve, in many cases where assumpsit is a concurrent remedy. . . . Although assumpsit will also usually lie for a breach of the contract, action on the case for the breach of the common law duty is often the better remedy. . . . It will also lie concurrently with assumpsit for a breach of duty arising out of an express or implied contract." *Burnett* v. *Lynch*, 5 Barn. & Cres. 589. (12 E. C. L. 327) is cited in support of the last statement. In that case the defendant had taken an assignment of a lease subject not only to the payment of rent, but to the performance of the covenants, and had thereby made it his duty to pay the rent and perform the covenants. It was held by Abbott, C. J. that either assumpsit or case was maintainable for a breach of that duty, citing *Kinlyside* v. *Thornton*, 2 Wm. Bl. 1111. In the opinion of Bailey, J. it is said : "It is unnecessary to go through the cases in which it has been decided, that although there be an express contract, a party is not bound to resort to that contract as the gist of the action, but he may declare on the tort, and say that the party has neglected to perform his duty. In *Dickson* v. *Clifton*, 2 Wils. 319, there can be no doubt that an action of assumpsit might have been maintained against the captain for not receiving and carrying the corn, or for not taking care of the cargo ; but there the plaintiff described the contract in specific terms, and brought case against the defendant for negligence in the performance of his duty. That could only be because the express contract between the parties created a duty, for the breach of which an action of tort might be maintained." See also Chitty on Plead. (16 Ed.) Vol. 1, page 162, with the observations of Lord Ellenbourgh on *Govett* v. *Radnidge*, 3 East, 70, there cited, and Broom's Legal Maxims, 201-202 and cases cited.

In the case at bar an action on the case is brought to recover damages for the consequential injuries resulting from the negligent manner in which the defendant company performed a duty created

by an express contract between the parties.  It is not properly speaking an action based on the non-feasance of the defendant.  It is not brought to recover damages for the refusal of the defendant to perform the contract.  It sufficiently appears that the defendant laid the pipes, erected the hydrants and fully established its plant, and for a time operated it to the satisfaction of the plaintiff.  The action is based on the defendant's negligence in the operation and management of the plant, negligence which would be exemplified by a want of vigilance and attention in discovering a leak or adjusting a shut-off.  An action ex contractu might have been maintainable, as in *Knappman Whiting Co.* v. *Water Co.*, 64 N. J. L., supra, where the obligation of the contract was enforced and the water company held liable for a loss by fire resulting from a failure in the water pressure which was not due to any negligence of the company. But here the plaintiffs elected to bring case as they were legally entitled to do, a form of action obviously more favorable to the defendant, since it imposes upon the plaintiffs the burden of proving negligence on the part of the defendant respecting the duty which it engaged to perform.

According to the stipulations in the report, the entry must therefore be,

*Demurrer overruled.*
*Defendant to plead anew.*