**Margot Fairchild FROST**

v.

**Robert J. BARRETT, Jr. and
Mrs. K. R. Barrett.**

Supreme Judicial Court of Maine.

Oct. 10, 1968.

William Fenton, Bar Harbor, for plaintiff.

Edward Stern, Bangor, Ralph C. Masterman, Bar Harbor, for defendant.

Before WILLIAMSON, C. J., and WEBBER, TAPLEY, MARDEN, DU-FRESNE, WEATHERBEE, JJ.

WEATHERBEE, Justice.

On appeal.

This matter originated in a complaint brought by the plaintiff in the Superior Court in Hancock County seeking to recover from the defendants the value of the use and occupancy of a dwelling and lot in Bar Harbor which the defendants occupied during the summer of 1959. After a pretrial conference the Presiding Justice issued a pre-trial order in which he stated that as no genuine issue existed as to any material fact, he ordered summary judgment for the defendants as a matter of law. The order recited, in part:

"It is agreed the following are facts:

"On or about July 1, 1959 the defendants, husband and wife, orally agreed to purchase land and buildings in Bar Harbor, Maine from the plaintiff. Defendants were orally granted permission to occupy the premises pending passing of title. The defendants did in fact occupy the premises from July 4, 1959 to September 15, 1959. On July 16, 1959 the parties did enter into a written purchase and sale agreement intended to formalize the oral agreement above described. This agreement required that the plaintiff furnish these defendants a good and sufficient deed of marketable title to the premises within sixty (60) days of July 16, 1959. The written contract also contained this provision:

'In the event the seller cannot give good and marketable title on the date of the expiration of this contract it is agreed by the parties hereto that Fred C. Lynam & Co. shall, in that event, return to the purchasers the sum of one thousand five hundred dollars ($1500.00) paid upon the execution thereof, without interest and the con-

tract shall be thereby terminated, and all parties released from any obligation hereunder if the purchaser so elects.'

"The written agreement of July 16, 1959 described the purchase price as fifteen thousand dollars ($15,000.00) fifteen hundred dollars ($1500.00) of which was deposited in escrow with Fred C. Lynam Co., the balance to be paid upon the passing of title. The plaintiff was unable to fulfill her obligation to convey marketable title to the premises because of a flaw in her title. On September 26, 1959 she was notified by defendants' attorney that the contract was being dis-affirmed by reason of plaintiff's inability to perform. The defendants never occupied the premises after the disaffirmance, their occupancy having terminated on September 15, 1959.

"The plaintiff's action is to recover the fair and reasonable rental value of the premises from July 4, 1959 to September 15, 1959. It is agreed there was never an oral or written agreement by defendants to pay rent. The plaintiff contends liability results by operation of law."

The case comes to us on an appeal by the plaintiff from the judgment of the Presiding Justice. As there are no facts before us except those recited in the pretrial order as being agreed upon, the principle that the Justice's findings should stand unless clearly erroneous (Laskey v. L. & L. Manchester Drive-In, Inc., Me., 216 A.2d 310 (1966); Young v. Witham, 75 Me. 536 (1884)) does not apply. Instead, the appropriate test is whether the Justice's order was based upon any error of law. Mellen v. Mellen, 148 Me. 153, 157, 90 A.2d 818, 820 (1952); Pappas v. Stacey and Winslow, 151 Me. 36, 38, 116 A.2d 497, 498 (1955). We find no error.

Although there was never an oral or written agreement by the defendants to pay rent, the plaintiff contends that the law infers a promise to pay from their occupancy and from their disaffirming the

contract upon the plaintiff's failure to convey good title within the required sixty days.

■ The law of Maine on this issue was stated in Weeks v. Standish Hardware & Garage Co., 145 Me. 307, at 311, 75 A.2d 444, at 446 (1950), where the vendor disaffirmed an unenforceable contract to sell:

"The general principle that the implied obligation to pay rent by a vendee in possession arises upon disaffirmance was recognized in Patterson v. Stoddard, 47 Me. 355. It is true that in that case it was the vendee who disaffirmed, but the general principle upon which the rule is founded is the same whether it be the vendor or vendee who disaffirms. Upon disaffirmance the *relationship of vendor* and vendee is terminated and the law implies an obligation to pay for use and occupation. The extent of the obligation depends upon which party disaffirms. If the vendee disaffirm the law implies an obligation to pay for use and occupation *ab initio*, whereas if the vendor disaffirm, the implied obligation is to pay only for use and occupation subsequent to the disaffirmance. Such at least is the general rule in the absence of controlling circumstances not here present. * * *"

See also Lapham v. Norton, 71 Me. 83, 88 (1880). The principles stated by these cases appear to conform to the weight of authority as to this issue. Ankeny v. Clark, 148 U.S. 345, 13 S.Ct. 617, 37 L.Ed. 475 (1893); 55 Am.Jur., Vendor and Purchaser, Sec. 363, 611; 91 C.J.S. Vendor and Purchaser § 180; 49 A.L.R.2d p. 1169.

■ Although recognizing the validity of the rule stated in *Standish*, the plaintiff contends that, 1) there is an absence of proof that the vendor's title was not good and marketable on the date specified for title closing, 2) that it was the defendants who disaffirmed the contract, and 3) that plaintiff's failure to tender a deed conveying good and marketable title within the time specified for title closing is not disaffirmance in the absence of specific language in the contract that time was of the essence.

The Presiding Justice's pre-trial order stated as agreed fact that "The plaintiff was unable to fulfill her obligation to convey marketable title to the premises because of a flaw in her title." No further proof is required.

Rule 16(5), M.R.C.P., reads, in part:

"The court shall make an order which recites the action taken at the conference, the amendments allowed to the pleadings, and the agreements made by the parties as to any of the matters considered, and which limits the issues for trial to those not disposed of by admissions or agreements of counsel; and such order when entered controls the subsequent course of the action, unless modified at the trial to prevent manifest injustice. * * *"

No modification of this order was requested in the Superior Court and the statements made in the order control the present proceedings. Field and McKusick, Maine Civil Practice, 16.2.

Following the expiration of the sixty-day period during which plaintiff was required to convey good and marketable title, the attorney for the defendants notified the plaintiff that defendants were disaffirming the contract because of the plaintiff's inability to perform. Although the attorney spoke of "disaffirming" the contract, it is clear that he was stating the defendants' position that the contract was at an end because of the plaintiff's failure to perform.

■ A notice by a vendee announcing his recision of a contract of purchase because of the inability of the seller to give good title is not the disaffirmance from which *Patterson* implies an obligation to pay rent ab initio. It is the inability of the vendor to complete the contract to sell

which is the disaffirmance, although the disaffirmance is not implied by law unless the vendee has manifested his intention to rescind. 55 Am.Jur., Vendor & Purchaser, Sec. 613.

The plaintiff also contends that the Presiding Justice erroneously applied the law in concluding that plaintiff's failure to tender good and marketable title within the time specified was a disaffirmance, in the absence of specific language in the contract making time of the essence.

 Although such specific language does not appear in the contract here, the contract does express that the defendants might treat the agreement as broken by the plaintiff if the plaintiff was unable to convey good and marketable title within sixty days from the date of the contract. The provision in the contract quoted by the Presiding Justice in his order gives the purchasers the option to have the return of their down-payment money if the seller is unable to give good and marketable title at the expiration of sixty days and provides for the termination of the contract in that event and for the release of all parties from any obligation under it. We view this as persuasive evidence of the parties' intention that the defendants were entitled to strict performance of the contract and equivalent to a recitation that time is of the essence. Medomak Canning Co. v. York, 143 Me. 190, 57 A.2d 745 (1948).

We are not here called upon to determine whether any tender by defendants was a necessary part of the basis of defendants' claim that plaintiff was in default or to consider the principles of order of time of performance. 55 Am.Jur., supra, Secs. 103–105, 91 C.J.S., supra, §§ 100–102. The parties' agreement recited in the pre-trial order obviates this.

The fact that the escrow holds down-payment money does not constitute special circumstances which would prevent the application of the principle announced

in *Weeks.* Jellison v. Jordan, 68 Me. 373 (1878).

The defendants here, having entered into the use and occupancy of the premises under an oral license to do so in anticipation of the performance of a written contract by the plaintiff to convey good and marketable title to the premises, are not liable for rent for the period between such entry and the date on which they rescinded the contract by reason of the plaintiff's inability to convey marketable title as she had undertaken to do. The law implies an obligation to pay for use and occupancy ab initio only where the vendee disaffirms. When it is the vendor who disaffirms, liability for rent results only subsequently to the disaffirmance.

The defendants have joined the partners of Fred C. Lynam & Co. as third party defendants to recover the fifteen hundred dollars which the third party defendants hold in escrow. The third party defendants have answered stating their willingness to pay this money to whomsoever the Court directs. The defendants are entitled to the return of the money and therefore to judgment against the Third Party Defendants for Fifteen Hundred Dollars ($1500.00) without interest or costs.

Plaintiff's appeal is denied.