**HARMONY HOMES CORPORATION**

v.

**Donald CRAGG.**

Supreme Judicial Court of Maine.

Aug. 14, 1978.

Willard, Hanscom & Nickerson by Ward T. Hanscom, Sanford, for plaintiff.

Smith, Elliott, Wood & Nelson, P.A. by Robert J. Foley (orally), Saco, for defendant.

Before McKUSICK, C. J., and WERNICK, ARCHIBALD, GODFREY and NICHOLS, JJ.

WERNICK, Justice.

In 1973, plaintiff Harmony Homes Corporation brought action against defendant Donald Cragg in the Superior Court (York County). Plaintiff sought rescission of a contract obligating plaintiff to construct, and sell to defendant, a house in Sanford.[1] Defendant answered and also counterclaimed seeking specific performance of the contract, an award of $25,000.00 as damages for plaintiff's "violation" of the contract and $10,000.00 punitive damages.

In 1976, a default was entered against plaintiff. After a hearing as to the damages to be awarded on default, defendant was awarded damages of $15,500.00 as well as interest of $2,480.00 and costs. The opinion written by the presiding Justice indicated that the $15,500.00 damages represented the return to defendant of his $20,000.00 down-payment on the purchase price reduced by "rental" charges against defendant of $250.00 per month for the period December 1972 through and including May 1974. The $2,480.00 interest was the interest on this reduced amount running from June 1, 1974, calculated at 6% per annum.

---

1. Plaintiff's complaint also asked issuance of a writ of possession.

Appealing from the judgment entered, defendant contends that the presiding Justice misconceived the legal principles which here govern as to the award of damages, and in consequence of this error of the presiding Justice defendant was given a lesser amount of damages than was his lawful entitlement.

We sustain defendant's appeal in part and deny it in part.

The evidence presented at the hearing on damages established the following facts. On August 7, 1972, plaintiff and defendant entered an "agreement of sale" which also involved the construction of a house by plaintiff for defendant in Sanford. The purchase price was set at $36,300.00.[2] Defendant made an initial down payment of $500.00 and promised to pay the remainder of the purchase price at the time of closing which was initially set for October 30, 1972.

In December, 1972, even though construction of the house was not yet completed, the parties agreed that defendant could move into the house when he made a further down payment of $20,000.00. Defendant paid the $20,000.00 and moved into the house expecting plaintiff to complete construction and correct some deficiencies. Problems persisted, however, especially the problem of water accumulating in the basement and in the electrical panel and along electrical boards.

In April 1973, defendant left the house and soon thereafter rented an apartment in Massachusetts where he had obtained a new job. Defendant testified that his Massachusetts rental cost was $325.00 per month whereas under the purchase-sale agreement for the house in Sanford his "rental" cost was $175.00 per month. Even though defendant had taken up residence in Massachusetts, he never notified plaintiff that he had finally vacated the house in Sanford. Indeed, his family belongings remained at the Sanford house, and on various occasions after he began to work in Massachusetts defendant returned there on week-ends.

As of November 26, 1973, when defendant filed his answer to plaintiff's complaint, defendant admitted by his answer that he was *still* "living in the house" and had refused to vacate the premises.

As to events occurring after 1973, the evidence is vague. Apparently, during 1974 defendant continued to reside in Massachusetts. At some time during that year plaintiff came to the conclusion that defendant had permanently left the Sanford house. Accordingly, plaintiff removed belongings left by defendant at the house and put them in storage. Early in 1975 (apparently between February and April) plaintiff sold the Sanford house to a third party for approximately $46,000.00.

### 1.

Certain well-established principles should be mentioned at the outset to lay the foundation for analysis of the legal issues raised by the appeal. Ordinarily, a party may not affirm, or make use of, a contract to recover damages for breach thereof consistently with treating the contract as having been disaffirmed and proceeding on a "money had and received" (restitution) rationale of recovery. See *Doherty v. Dolan*, 65 Me. 87 (1876); *Junkins v. Simpson*, 14 Me. 364, 369 (1837). If a party has seen fit to proceed on a rationale of contract affirmance (seeking the benefit of his bargain) and claims breach of a contract to sell land, the measure of damages is the value of the land *at the date of the breach*, less the amount of the contract price remaining unpaid. See *Doherty v. Dolan*, 65 Me. at 88–91. Under this principle, as made clear in *Doherty v. Dolan* itself, a purchaser who has paid part of the purchase price before the seller breaks the contract, does not *recover the money paid on account of the purchase price* as part of the damages; rather, he recovers the value of the land at the time of the breach less whatever amount of the purchase price remains unpaid. In sum, the purchaser pays the full

---

2. The agreement further provided for a flooring allowance of $6.00 per sq. yd. The house contains 206 sq. yds. of flooring.

price he bargained to pay and in exchange therefor he receives what he bargained to receive, or its value.

This "benefit of the bargain" rule of damages for breach of contract may make it unwise in some circumstances for the purchaser to claim on a breach of contract rationale of recovery. Where, for example, the land in question has fallen in value such that at the time of the breach the amount paid on the purchase price exceeds the value of the land, and especially if the purchaser has no consequential damages to assert, the purchaser will end up having paid out more money on account of the purchase price than he will be awarded as damages for the vendor's breach of contract. In such a situation the purchaser will fare better by choosing to disaffirm the contract and claim damages on restitutional principles—as illustrated by the "money had and received" approach in *Doherty v. Dolan*, supra, under which the purchaser becomes entitled to recover the amount paid on account of the purchase price plus interest on the amount thus paid.

With the above-stated principles in mind, and under our usual approach as an appellate tribunal that, in the absence of a showing to the contrary, we deem the presiding Justice to have known and correctly applied the relevant law, we find it here of critical significance that the presiding Justice expressly concluded that defendant is "entitled to the return of his down payment . . . ." Under the principles above-delineated, a return of the down payment would be inconsistent with a breach of contract rationale of recovery. This being so, we take the express statement of the presiding Justice to indicate that he believed, in accordance with our liberalized rules of pleadings as well as the liberal approach taken in *Doherty v. Dolan*, supra, that even if defendant's counterclaim appears to read more like a claim affirming the contract and seeking damages for breach of contract than a claim based on contract disaffirmance with damages to be awarded on "money had and received" (restitution) principles, the counterclaim may fairly be read to encompass contract disaffirmance and a "money had and received" (restitutional) award of damages as an alternative ground of recovery. Hence, we interpret the decision of the presiding Justice to be that on the evidence adduced defendant would be worse off if damages on his counterclaim were awarded on the basis of a breach of contract approach, and therefore, in fairness to defendant, damages should be awarded him on the rationale that he had disaffirmed the contract and was entitled to damages on "money had and received" (restitution) principles.

The evidence supports such "justice to the defendant" approach by the presiding Justice.

In terms of a breach of contract theory of recovery, the only evidence as to the property's having a value in excess of the unpaid contract price was that plaintiff sold the premises to a third party in 1975 for approximately $46,000.00. However, this evidence could not benefit defendant for the purposes of computing the damages due on a breach of contract rationale. As the presiding Justice explained:

> "Defendant failed to take reasonable steps to minimize his damages, in that he not only failed to notify the plaintiff of his intention to withdraw from the contract but also he left personal belongings behind which would tend to mislead plaintiff that he intended to leave permanently."

Hence, since defendant never gave notice to plaintiff that defendant had decided to treat the contract as broken, the presiding Justice was entitled to conclude that if there was a breach of contract by plaintiff, the breach had not occurred during the year 1975.

Apart from the aforesaid evidence of the 1975 sale price, defendant otherwise failed to present evidence of any appreciation in the value of the property. Thus, in the absence of any evidence as to the value of the premises *at the time that the property should have been conveyed*, this being the time of plaintiff's breach of the contract, there would be no justification for defend-

ant to recover any damages for appreciation in the value of the property. As explained in *Doherty v. Dolan*, if there is no difference between the contract price and the value of the land at the time that it should have been conveyed, the purchaser can recover only nominal damages for breach of contract.

Similarly, as bearing on the damages properly recoverable on a breach of contract rationale, the evidence would not support an award for consequential damages predicated on the extra amount it cost defendant to live in Massachusetts instead of in the Sanford house under the contract. The evidence indicated that when defendant first moved out of the Sanford house, he returned to his mother's home in Georgetown, Massachusetts and was apparently undecided as to whether he would return to Maine. Defendant, however, then obtained a job in Massachusetts and *thereafter* he rented the apartment which was near to his place of employment in Massachusetts. The presiding Justice found that

"defendant's move to Massachusetts . . was more prompted by his choice of employment than the failure of plaintiff to produce under his contract."

Since all of the evidence rested on defendant's testimony and was somewhat ambiguous, the presiding Justice was entitled to reject defendant's claim that his move to Massachusetts and the attendant higher cost of living could be regarded as a natural and probable consequence of any breach of contract by plaintiff. See *Inhabitants of Milford v. Bangor Railway & Electric Company*, 104 Me. 233, 71 A. 759 (1908).

■ Lastly, on a breach of contract rationale of recovery defendant would not be entitled to an award of damages for the lost investment value of the money paid on account of the purchase price. As previously explained, the money paid towards the

purchase price is not itself a legally cognizable element of damage for the breach of a contract to sell land,[3] and, therefore, losses deriving from such down payment of purchase price are likewise not recoverable as breach of contract damages.

2.

We turn, then, to consider whether, with the presiding Justice taken on his own grounds as concluding that defendant had disaffirmed the contract and should be awarded "money had and received" restitution damages, the Justice made a correct award of damages. As to this issue, defendant maintains that the presiding Justice erred in charging against defendant $250.00 a month as "rent" for the period from December 1972 through and including May 1974.

■ We disagree with defendant's first contention in this regard, that there should have been no reduction at all. Generally, if a seller has refused to perform his contractual obligations, the purchaser who has complied with the terms of the sale-purchase agreement is entitled to recover the amounts he has paid, see, e. g., *Pancoast v. Dinsmore*, 105 Me. 471, 75 A. 43 (1909); *Segars v. Segars*, 71 Me. 530 (1880); *Jellison v. Jordan*, 68 Me. 373 (1878); *Kneeland v. Fuller*, 51 Me. 518 (1863). However, any such recovery of money paid "must be limited to what is just and equitable under all circumstances." *Richards v. Allen*, 17 Me. 296, 300 (1840). On the facts of *Richards v. Allen*, supra, the purchaser had gone into possession of the realty before the seller repudiated the contract of sale. This Court held that the equities of that contract required that the purchaser's recovery of the money he had paid under the contract should be reduced by the value of his use and occupation of the premises. Depending on circumstances, too, the equities might

---

**3.** Even on a "money had and received" (restitution) rationale of recovery, under which a down payment on the purchase price is properly recoverable as an element of damage, the lost investment value of the money paid is not taken into account. As indicated in *Doherty v. Dolan*, supra, it is interest which compensates

for the lost use of the down payment on the purchase price, 65 Me. at 91, 92—*interest* being, in general, the compensation allowed by the law for another's use, or detention, of money. See *Orono-Veazie Water District v. Penobscot County Water Company*, Me., 348 A.2d 249, 257, 258 (1975).

not require deduction of the full value of use and occupation. For example, the amount of the reduction can depend upon whether the purchaser rather than the seller disaffirmed the contract.

> " 'If the vendee disaffirm the law implies an obligation to pay for use and occupation *ab initio*, whereas if the vendor disaffirm, the implied obligation is to pay only for use and occupation subsequent to the disaffirmance. Such at least is the general rule in the absence of . . . [special] circumstances . . . .' "

*Frost v. Barrett*, Me., 246 A.2d 198, 200 (1968), quoting from *Weeks v. Standish Hardware & Garage Co.*, 145 Me. 307, 311, 75 A.2d 444, 446 (1950).

██ We also reject defendant's further argument that the default judgment precluded plaintiff's being given the benefit of any reduction. The default judgment was an adjudication only that plaintiff was liable to defendant. It left open questions bearing upon the appropriate amount of the recovery, including such issues as might involve equitable adjudication based on the conduct of the parties. As this Court explained in *Richards v. Allen,* supra, the reduction for use and occupation is permissible

> "even without an account in offset, as it . . . [is] necessarily connected with the . . . [purchaser's] claim, and . . . [is] of a character to affect and qualify it." (17 Me. at 300)

In the circumstances of this case, then, there was a legal basis for the presiding Justice's conclusion that some reduction should be made in defendant's recovery of the money paid on account of the purchase price.

██ Even so, however, we must sustain defendant's appeal because it appears that in determining the amount of the reduction to be imposed, by applying the principles above-stated, the presiding Justice committed error.

First, as defendant correctly points out, there is no evidence in the record to support the figure of $250.00 per month fixed by the presiding Justice as the rental value of the premises.

Second, the findings of the presiding Justice contain ambiguities which leave us uncertain whether, in requiring the $250.00 per month reduction to be computed *as commencing December 1972*, the presiding Justice correctly applied the principles enunciated in *Frost v. Barrett,* supra,— more particularly in regard to the disaffirmance of the contract and its consequences. Since the case is being remanded in any event for recomputation of the equitable amount of reduction, we mention for consideration by the Superior Court on remand the principle stated in *Frost v. Barrett*:

> "A notice by a vendee announcing his recision of a contract of purchase because of inability of the seller to give good title is not the disaffirmance from which *Patterson* implies *an obligation to pay rent ab initio.* It is the inability of the vendor to complete the contract to sell which is the disaffirmance, although the disaffirmance is not implied by law unless the vendee has manifested his intention to rescind." (246 A.2d at 200, 201) (emphasis supplied)

Moreover, on remand, the Superior Court could rule on defendant's claim, apparently not previously taken into account, that defendant should be awarded $1,500.00 as monies allegedly spent in reliance on the contract—properly recoverable, says defendant, as "reliance" damages under a "money had and received" (restitution) rationale of recovery.

The entry is:

Appeal sustained in part, and denied in part; case remanded to the Superior Court for further proceedings in accordance with the opinion herein; no costs on appeal.

POMEROY and DELAHANTY, JJ., did not sit.