## OMAR J. MILLER *v.* COMMISSIONER OF CORRECTION
### (AC 29562)

DiPentima, Gruendel and Peters, Js.

Argued April 15—officially released August 11, 2009

*Michael Zariphes*, special public defender, for the appellant (petitioner).

*Lawrence J. Tytla*, supervisory assistant state's attorney, with whom, on the brief, was *Michael L. Regan*, state's attorney, for the appellee (respondent).

*Opinion*

GRUENDEL, J. The petitioner, Omar J. Miller, appeals from the judgment of the habeas court denying his petition for a writ of habeas corpus. He contends that the court improperly concluded that he failed to

prove his claim of ineffective assistance of counsel. The petitioner further alleges a due process violation. We affirm the judgment of the habeas court.

The court's memorandum of decision contains the following findings of fact. "The petitioner was convicted of the January 15, 1991 shooting death of . . . Charles Green. The petitioner had been arrested by the New London police on the charge of possession of marijuana on January 18, 1991. Robert Bell, a bounty hunter who knew the petitioner, arranged for a bail bondsman, Rick Brown, to come to the New London police department and post the petitioner's bond for this matter. After being released, the petitioner and . . . Bell drove off. It was . . . Bell's intention to find out what the petitioner might know about the shooting of . . . Green in order to prevent further acts of violence in the New London area. . . . Bell drove around with the petitioner for a while [and] purchased some food and sundries for him in Groton. When . . . Bell asked the petitioner if he knew who had shot the decedent . . . Bell was surprised when the petitioner confessed that he had done so. . . . Bell convinced the petitioner that he needed to turn himself in to the New London police, but before doing so, the petitioner wanted to go see his mother and tell her what he had done. . . . Bell and the petitioner then drove to the petitioner's mother's house where the petitioner proceeded to ingest some illegal drugs and then told his mother about the shooting. . . . Thereafter . . . Bell took the petitioner to the New London police department where he gave a detailed statement regarding the murder and was subsequently arrested for the crime."

The court also stated in its decision: "The petitioner [subsequently] was the defendant in two criminal matters in the judicial district of New London . . . in which he was charged with murder in violation of General Statutes § 53a-54a and other offenses. . . . The

petitioner was represented by attorney Richard Perry, a private attorney who had been appointed by the court as a special public defender to represent him in this case. . . . During the course of his representation . . . Perry, personally and through the good offices of the public defender's investigator . . . Arthur Brautigam, thoroughly investigated the facts (including the version of events told by the petitioner) and became convinced that the state had a strong body of evidence arrayed against the petitioner. . . . Perry's professional opinion was that the petitioner would, in all likelihood, be convicted and was quite likely to receive a lengthy sentence if the case were to be tried. Notwithstanding . . . Perry made all appropriate preparations for trial. . . .

"Based upon the charges, the petitioner's potential exposure for incarceration was substantial and potentially for the remainder of his life. . . . The petitioner . . . ultimately elected to accept the offer of a pretrial bargain in which the petitioner would plead guilty to the charge of murder in exchange for a sentence of thirty-five years with a right to argue for a lower sentence. The remaining charges. were all nolled by the state. . . . Thereafter, on September 27, 1991, the court, *Stanley, J.*, thoroughly canvassed the petitioner and found his pleas to be knowingly and voluntarily made with the assistance of competent counsel. The court thereafter accepted the pleas and entered a finding of guilty as to the count of murder. . . . Sentencing was set for November 6, 1991. . . .

"On October 9, 1991, the petitioner, who had been held at the Brooklyn Correctional Center awaiting sentencing, escaped from the custody of the commissioner of correction. He remained at large until 1997, when he was apprehended in New York City and ultimately returned to Connecticut. . . . On November 6, 1991,

the court, *Stanley, J.,* proceeded to sentence the petitioner, in absentia, to a thirty-five-year period of incarceration. . . . Perry did not . . . argue for a lesser sentence."

Approximately sixteen years later, the petitioner filed a fourth amended petition for a writ of habeas corpus that alleged, inter alia, ineffective assistance of counsel and a due process violation.[1] A habeas trial followed, at the conclusion of which the court rejected the petitioner's claims. In so doing, the court "specifically" found that "the petitioner is lacking in credibility." The court thereafter granted the petition for certification to appeal to this court.

## I

The petitioner first claims that the court improperly concluded that he failed to sustain his burden of proof in demonstrating ineffective assistance of counsel. We do not agree.

Our standard of review of the petitioner's claim is well established. "In a habeas appeal, this court cannot disturb the underlying facts found by the habeas court unless they are clearly erroneous, but our review of whether the facts as found by the habeas court constituted a violation of the petitioner's constitutional right to effective assistance of counsel is plenary. . . . Because a defendant often relies heavily on counsel's independent evaluation of the charges and defenses, the right to effective assistance of counsel includes an adequate investigation of the case to determine facts relevant to the merits or to the punishment in the event of conviction. . . . Regardless, counsel need not track down each and every lead or personally investigate

---

[1] The fourth amended petition for a writ of habeas corpus also contained an allegation of prosecutorial impropriety. In its memorandum of decision, the court deemed that claim abandoned, a conclusion with which the petitioner does not quarrel.

every evidentiary possibility before choosing a defense and developing it. . . .

"A habeas petitioner can prevail on a constitutional claim of ineffective assistance of counsel [only if he can] establish both (1) deficient performance, and (2) actual prejudice. . . . For ineffectiveness claims resulting from guilty verdicts, we apply the two-pronged standard set forth in *Strickland* v. *Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *Levine* v. *Manson*, 195 Conn. 636, 639–40, 490 A.2d 82 (1985). For ineffectiveness claims resulting from guilty pleas, we apply the standard set forth in *Hill* v. *Lockhart*, 474 U.S. 52, 59, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985), which modified *Strickland*'s prejudice prong. . . . To satisfy the performance prong, the petitioner must show that counsel's representation fell below an objective standard of reasonableness. . . . A petitioner who accepts counsel's advice to plead guilty has the burden of demonstrating on habeas appeal that the advice was not within the range of competence demanded of attorneys in criminal cases. . . . The range of competence demanded is reasonably competent, or within the range of competence displayed by lawyers with ordinary training and skill in the criminal law. . . . Reasonably competent attorneys may advise their clients to plead guilty even if defenses may exist. . . . A reviewing court must view counsel's conduct with a strong presumption that it falls within the wide range of reasonable professional assistance . . . .

"To satisfy the prejudice prong, the petitioner must show a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. *Hill* v. *Lockhart*, supra, 474 U.S. 59 . . . . Reasonable probability does not require the petitioner to show that counsel's deficient conduct more likely than not altered the outcome in the case, but he must establish a probability sufficient

to undermine confidence in the outcome. *Strickland* v. *Washington,* supra, 466 U.S. 693–94 . . . . The *Hill* court noted that [i]n many guilty plea cases, the prejudice inquiry will closely resemble the inquiry engaged in by courts reviewing ineffective-assistance challenges to convictions obtained through a trial. For example, where the alleged error of counsel is a failure to investigate . . . the determination whether the error prejudiced the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea. This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial. *Hill* v. *Lockhart,* supra, 59 . . . . A reviewing court can find against a petitioner on either ground, whichever is easier." (Citation omitted; internal quotation marks omitted.) *Ricks* v. *Commissioner of Correction,* 98 Conn. App. 497, 502–504, 909 A.2d 567 (2006), cert. denied, 281 Conn. 907, 916 A.2d 49 (2007).

The petitioner's allegation of ineffective assistance centers on Perry's alleged failure to investigate the case adequately. The petitioner claims that had Perry investigated the case adequately, he would have uncovered information that would have led to the suppression of his confessions to Bell and the police, as well as evidence that someone else perpetrated the murder of Green.

We begin our consideration of the petitioner's contention by noting certain evidence that was introduced at the habeas trial regarding Perry's investigation of the case. Perry testified that, as sixteen years had passed since his representation of the petitioner, his file and notes on the case no longer existed and his recollection of certain events had faded. At the same time, Perry noted his general practice prior to entering into a plea agreement of investigating all aspects of the state's case,

including any potentially exculpatory witnesses. Perry testified that he availed himself of the state's "open file policy" and reviewed the entire file, including police reports and witness statements contained therein. Perry also reviewed the petitioner's written confession to the police and the audiotape of his interview with the police. Perry further spoke with family members of the petitioner, including his mother. He reviewed her written statement and that of her husband, Reginald Thornton, indicating that the petitioner had confessed to the murder of Green. Perry testified that he considered and relied on those statements in making decisions affecting his representation of the petitioner. Perry also testified that his review of Bell's statement to the police that the petitioner had confessed to the murder similarly informed his representation of the petitioner.

In addition, Perry asked Brautigam, a senior investigator in the New London public defender's office, to "interview prospective witnesses, to talk to [the petitioner] about potential defenses . . . and to generally investigate the case." Brautigam testified at the habeas trial that he had reviewed the entire state's file, that he had met with the petitioner to develop information and that he had attempted to interview prospective witnesses. In response to the question from the petitioner's counsel as to why an investigator would not file a report in a given case, Brautigam testified that when "all the information . . . found out didn't help the client, you wouldn't file a report." Brautigam did not file a written report in the petitioner's case.

On appeal, the petitioner first posits that his January 18, 1991 arrest for possession of marijuana lacked probable cause and was pretextual. The petitioner failed, however, to present credible evidence in support of that argument. The claim is predicated almost entirely on the testimony of the petitioner, which presents two distinct problems. First, as we previously noted, the

court discounted the petitioner's testimony, finding him lacking in credibility. It is axiomatic that the habeas court, "in its role as finder of fact, was the sole arbiter of the credibility of the witnesses and the weight to afford their testimony. . . . This court does not second-guess findings related to the credibility of witnesses." (Citation omitted; internal quotation marks omitted.) *Eastwood* v. *Commissioner of Correction*, 114 Conn. App. 471, 484, 969 A.2d 860, cert. denied, 292 Conn. 918, 973 A.2d 1275 (2009). Second, by all accounts, the petitioner refused to cooperate with Perry in 1991. He declined to speak with Perry and to respond to Perry's questions concerning the events leading to his arrest.[2] Our consideration of the adequacy of Perry's investigation is informed by that glaring fact.

Furthermore, no police reports or court records concerning the January 18, 1991 arrest were presented to the court. Indeed, the only evidence in the record before us concerning the arrest is the testimony of Detective Frank Jarvis of the New London police department. Jarvis testified that on January 18, 1991, he proceeded to 73 Colman Street to arrest Lamont Waites on a violation of probation charge. Upon arriving, Waites invited Jarvis into the residence, and Jarvis detected the odor of marijuana and noticed that drug in plain view. As a result, Jarvis testified that "other people in the house were arrested for possession of marijuana," including the petitioner. From those scant details, the petitioner speculates that his arrest "was most likely contrived and pretextual." To prevail on a petition for a writ of habeas corpus, mere conjecture does not suffice. See *Ostolaza* v. *Warden*, 26 Conn. App. 758, 765, 603 A.2d 768 (petitioner's burden not met by speculation but by

---

[2] The petitioner testified that he refused to communicate with Perry because he was "ambivalent" and "very upset" at the time. Although he testified that he "was very young" and "didn't know who to trust," the petitioner further testified that he relied on the assistance of a "jailhouse lawyer."

demonstrable realities), cert. denied, 222 Conn. 906, 608 A.2d 692 (1992). Because the petitioner has failed to present an evidentiary basis for the court to conclude that his January 18, 1991 arrest was either illegal or pretextual, he cannot demonstrate that Perry's failure to investigate and to pursue such a claim constituted deficient performance.

The petitioner next claims that Perry failed to investigate adequately the possible existence of an agency relationship between Bell and the New London police department. On the evidence presented, the court found that claim untenable. The court heard testimony from Jarvis, who directly refuted the agency allegation, stating that he neither contacted Bell nor had anything to do with Bell's posting the petitioner's bond:

"[The Prosecutor]: Detective Jarvis, on January 21, 1991, did you have anything to do with selecting Bell or making arrangements with Bell to bond out [the petitioner]?

"[The Witness]: No, sir, I did not.

"[The Prosecutor]: And before Bell left the police station with [the petitioner], did you have a conversation with him?

"[The Witness]: Yes, sir.

"[The Prosecutor]: Did he convey to you that he believed [the petitioner] might have information about the shooting?

"[The Witness]: Yes, sir.

"[The Prosecutor]: At that point, had suspicion focused on [the petitioner], or some other suspect, as being the likely shooter?

"[The Witness]: At that point it was still under investigation.

"[The Prosecutor]: And when you had that conversation with Bell, and he indicated that he thought [the petitioner] might have information, what, if anything, did you tell Bell?

"[The Witness]: Regarding that conversation, that I wanted to make sure that he understood we had no responsibility or involvement with bailing out [the petitioner]. And the fact that—because then that would make it look like he was our agent, so we didn't want any involvement in that. And I'm very—very much a stickler on the fact that I don't allow people to be my agents because it jeopardizes the investigation.

"[The Prosecutor]: Did you suggest, or in any way encourage Bell to question [the petitioner] about the shooting of Charles Green?

"[The Witness]: No, sir. Whenever anybody is going out on bond, I don't want anything to do with that. That's a decision he wants to make, he wants to take him out, he can do whatever he wants to do. I, as a law enforcement officer, have nothing to do with that."

In addition, Bell testified at the habeas proceeding. In its memorandum of decision, the court credited his testimony. Bell testified that he had a relationship with Green and, thus, a personal interest in ascertaining the identity of his killer. Bell further testified that upon his arrival at the police station, he offered to speak with the petitioner in an attempt to obtain information; the police declined that proffer. Bell testified that it was his idea to post the petitioner's bond in an attempt to obtain information on Green's shooting and that he acted on his own initiative. Bell explained that the police discouraged his efforts, noting that "if I talked to [the petitioner], I would have to then become an agent of the police department, which would put this in a whole different technicality legally-wise, and [the New London police] didn't find that to be feasible."

Furthermore, although attorney Gary A. Mastronardi, testifying as an expert witness for the petitioner, opined that "from what I have seen, there [was] adequate evidence in the record from which [Perry] could have argued the existence of an agency relationship," Mastronardi on multiple occasions acknowledged that his review of the record was incomplete and conceded that the record indicated that the New London police informed Bell that he "can't be [their] agent."[3]

The gist of the petitioner's claim is that had Perry pursued an allegation that Bell was an agent of the police, he would have discovered information leading to the suppression of the petitioner's confession to Bell, as well as his subsequent confessions to his mother, to Thornton and to the police. On the evidence adduced at trial, we share the court's disagreement with that hypothesis. As with his prior claim, the petitioner has failed to remove his contention from the realm of speculation and conjecture, which "have no place in appellate review." *Narumanchi* v. *DeStefano*, 89 Conn. App. 807, 815, 875 A.2d 71 (2005). As a result, we cannot say that Perry's representation of the petitioner was deficient in failing to pursue that claim.

The petitioner also maintains that Perry failed to investigate William Harris adequately, an alleged eyewitness to Green's murder. At trial, the transcript of an interview conducted by Jarvis with Harris on July 12, 1991, was introduced into evidence.[4] At the time of that interview, Harris was incarcerated at the Montville correctional center, as was the petitioner. Harris stated in the interview that although the petitioner was present at the shooting of Green, a man referred to as "K" pulled the trigger. On appeal, the petitioner maintains that

---

[3] The court did not acknowledge or credit Mastronardi's testimony in its memorandum of decision.

[4] Harris did not testify at the habeas trial.

Perry failed to investigate this potentially exculpatory evidence adequately.

To the contrary, Perry testified at the habeas trial that he reviewed that interview. Perry further explained that he had instructed Brautigam to "check out all witnesses." In response to the question of whether Brautigam "checked out" Harris, Perry testified, "I know Mr. Brautigam very well. I'm sure he did." Perry explained that he discounted Harris' allegation "because we didn't believe a word that Harris said. . . . We felt that Harris was a liar." Perry testified that after consulting with Brautigam, he reached the determination that Harris was not credible. Moreover, the petitioner acknowledged that when Perry had asked him about any information that "would point the finger at someone else," he was "irate" and "angry" and refused to cooperate with Perry. Finally, Perry testified that in making decisions affecting his representation of the petitioner, he relied on the fact that the petitioner had confessed to murdering Green to Bell, to his mother, to Thornton and to the New London police. Given that evidence, we agree with the court that Perry adequately investigated the petitioner's case. Accordingly, the petitioner's ineffective assistance of counsel claim fails.

## II

The petitioner also presents a due process claim. Specifically, he contends that the trial court violated his right to due process by imposing a thirty-five year sentence on the crime of murder when, he alleges, he had pleaded guilty to the crime of manslaughter in the first degree in violation of General Statutes § 53a-55. We conclude that the claim is without merit.

The following additional facts aid our consideration of the petitioner's claim. On January 12, 1999, then chief court administrator Robert C. Leuba, in accordance

with General Statutes § 51-36 (b), ordered the destruction of "the official records of the court reporters taken in judicial proceedings of the Superior Court more than seven years prior to February 1, 1999, and which are in the custody of the clerks of the court or their designee, including those stored at the records center."[5] Included among those records was the transcript of the petitioner's September 27, 1991 plea hearing.

Other than his testimony, which the court did not credit, the petitioner presented no evidence whatsoever to support his claim.[6] The court was presented with ample evidence, which it found allowed "for the effective reconstruction of the events of [the] plea canvass." Perry testified that the petitioner had pleaded guilty to the charge of murder. In addition, attorney John Gravalec-Pannone testified at the habeas trial. Gravalec-Pannone represented the state in its prosecution of the petitioner. As to the precise nature of the plea, Gravalec-Pannone testified as follows:

"[The Prosecutor]: With regard to the plea recommendation, as part of the agreement, was there a specific

---

[5] To the extent that the petitioner suggests that § 51-36 (b) establishes a constitutional right to the maintenance of court records, he has provided no authority or reasoned analysis for that proposition. As this court frequently has observed, "[w]e are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failing to brief the issue properly. . . . Where the parties cite no law and provide no analysis of their claims, we do not review such claims." (Citation omitted; internal quotation marks omitted.) *Turner* v. *American Car Rental, Inc.*, 92 Conn. App. 123, 130–31, 884 A.2d 7 (2005); see also *Harris* v. *Commissioner of Correction*, 107 Conn. App. 833, 843 n.10, 947 A.2d 7 ("cursory treatment without substantive analysis or legal citation does not constitute adequate briefing"), cert. denied, 288 Conn. 908, 953 A.2d 652 (2008). Accordingly, we decline to review that constitutional contention.

[6] We note that despite his present allegation, the petitioner in 2000 filed a pro se brief with this court in which he averred that he had pleaded guilty to the charge of murder.

charge [the petitioner] was to plead to pursuant to the agreement?

"[The Witness]: It was murder.

"[The Prosecutor]: And was there any discussion about a lesser charge than murder?

"[The Witness]: There was never any discussion. The discussions, as I recall them, between myself, Perry and Judge Stanley, and given the fact [that the petitioner] had confessed to his mother and stepfather, and given a written confession, was basically the number of years on a murder charge. As we normally do, I talked to the family of Green. I had discussed the matter with the New London police . . . and I felt a thirty-five year sentence with a right to argue was appropriate and that's what I recommended. Judge Stanley felt it was appropriate, and he would listen to Perry on sentencing day. We'd argue our respective positions as to whether he would give a lesser sentence.

"[The Prosecutor]: At any point did you consider or discuss with Perry the possibility of a plea to a lesser charge of manslaughter?

"[The Witness]: The answer is no because I felt the state had a strong case. . . . [Q]uite frankly, with what I thought was a fairly strong case I didn't consider manslaughter at all. It was an execution type murder based on what I previously testified to as to the confessions that had been obtained; the fact [that] Judge Leuba denied the motion to suppress, I felt confident [that] if we had gone to trial in front of Judge Leuba, we would have prevailed and [the petitioner] would have gotten a much longer sentence than that."

In addition, a certified copy of the petitioner's docket sheet was introduced into evidence. On the "sentence-judgment" section of that docket sheet, the charge of

murder in violation of § 53a-54a is indicated. The petitioner introduced into evidence the presentence investigation report, which, too, reflected that the petitioner pleaded guilty to the charge of murder. The petitioner also introduced into evidence the November 6, 2001 sentencing transcript. That transcript indicates that the petitioner "had entered a guilty plea to the charge of murder."

Given the paucity of evidence to support the petitioner's claim that he had pleaded guilty to a charge of manslaughter and the aforementioned evidence to the contrary, we conclude that the court properly rejected the claim. The unavailability of the plea hearing transcript in this case did not violate the petitioner's right to due process.

The judgment is affirmed.

In this opinion the other judges concurred.