STATE OF MAINE                          BUSINESS AND CONSUMER COURT
CUMBERLAND, ss                          Location: Portland
                                        Docket No.: BCD-CV-12-01
                                        AMH — CuM- 5/24/2013

                                )
BERRY HUFF McDONALD             )
MILLIGAN, INC. d/b/a BH2M,      )
                                )
            Plaintiff           )
                                )                    ✓
                                )
    v.                          )
                                )
MARK McCALLUM                   )
    d/b/a GROUP 1 REALTY        )
    d/b/a COUNTRY CLUB ESTATES, )
    d/b/a MOUNTAIN ROAD TRUST,  )
MOUNTAIN HEIR FINANCIAL         )
CORP., and GOOSEFARE ACRES,     )
LTD., INC.,                     )
                                )
            Defendants          )

ORDER ON PLAINTIFF BH2M'S MOTION FOR SUMMARY JUDGMENT ON
DEFENDANTS' COUNTERCLAIMS

Plaintiff Berry Huff McDonald Milligan, Inc. (BH2M), doing business as BH2M,
initiated this action on December 2, 2011, by filing a four-count complaint in Cumberland
County Superior Court.[1] On December 22, 2011, Defendants answered and counterclaimed for:
1) "money had and received,"[2] 2) fraud, and 3) professional negligence. The case was
transferred to the Business and Consumer Court on January 4, 2012. On December 10, 2012,
the Court denied Defendant Mark McCallum's M.R. Civ. P. 12(b)(6) motion to dismiss.
Currently pending is Plaintiff's motion for summary judgment on Defendants' counterclaims,
along with the Defendants' opposition and related materials. The court elects to decide the
Plaintiff's motion without oral argument. See M.R. Civ. P. 7(b)(7).

---

[1] Plaintiffs allege the following causes of action against all Defendants: 1) breach of contract; 2) violation of
10 M.R.S. § 1113 (2011), (Count II); unjust enrichment (Count III); and quantum meruit (Count IV).
[2] The nature of this count is discussed further in the order.

1

## FACTUAL BACKGROUND

The following facts are undisputed, except where noted.[3] McCallum is a real estate developer based in Saco, and has been a client of BH2M for almost 30 years, either individually or through his entities.[4] (S.S.M.F. ¶ 5, 12; O.S.M.F. ¶¶ 5, 12.) BH2M is an engineering firm in Gorham, and Lester Berry is a professional engineer and shareholder of BH2M who provided engineering work for McCallum's subdivisions. (S.S.M.F. ¶¶ 1, 4, 16; O.S.M.F. ¶¶ 1, 4., 16). BH2M performed a variety of professional services for McCallum in furtherance of development and approval of his subdivision projects. (S.S.M.F. ¶ 14; O.S.M.F. ¶ 14.) All professional services agreements between McCallum and BH2M were oral agreements. (S.S.M.F. ¶ 13; O.S.M.F. ¶ 13.)[5] Through the lawsuit, BH2M is seeking payment from McCallum and/or his entities for approximately $50,000 worth of professional services on McCallum's various subdivision projects. (S.S.M.F. ¶¶ 17-20; ¶¶ O.S.M.F. 17-20.)[6]

Defendants' first counterclaim asserts that McCallum paid $3,537.50 to BH2M in error—as an overpayment—and seeks judgment in that amount. (Answer 5.) The actual claim asserted, however, is not clear. The gravamen is that on one invoice, Defendants overpaid

---

[3] Defendants did not file an additional statement of material facts with their opposition, but on February 15, 2013, Defendants submitted "Defendants' Response to Plaintiff's Reply Statement of Material Facts." Such response is not permitted pursuant to M.R. Civ. P. 56(h)(3), nor did Defendants receive leave of the court to file their "response." The bulk of the "response" is legal argument regarding Plaintiff's objections to Defendants' opposition and is not considered. Several of the numbered paragraphs, however, appear to be revisions to Defendants' opposing statement of material facts, changing several responses from "denied" to "admitted," and the Court has considered those in this order.

In its reply brief, BH2M argues that the Court should not treat the affidavit of Mark McCallum submitted in opposition to the motion for summary judgment as Defendants' additional statement of material facts. Although the Court does not understand that to be the intent of the affidavit, as it is cited in Defendants' opposing statement of material facts, the Court does not treat it as a statement of material facts pursuant to M.R. Civ. P. 56.

[4] McCallum is the president and sole shareholder of Defendants Mountain Heir Financial Corp. and Goosefare Acres, Ltd., Inc., and Mountain Road Realty Trust. (S.S.M.F. ¶¶ 8-9, 11; O.S.M.F. ¶¶ 8-9, 11.) McCallum had an ownership interest in Group 1 Realty, Inc., but the company ceased doing business in 2009. (S.S.M.F. ¶ 7; O.S.M.F. ¶ 7.)

[5] Defendants qualify this statement to note that since 2001, all surveying contracts had to be in writing and there were three such written agreements between BH2M and McCallum. (O.S.M.F. ¶ 13.)

[6] Defendants deny that McCallum is personally liable or responsible for these amounts. (O.S.M.F. ¶ 19.)

2

BH2M by $3,537.50, although through discovery, Defendants allege that the amount of the overpayment is actually $6,350. (Answer 4-5; S.S.M.F. ¶¶ 23-24; O.S.M.F. ¶¶ 23-24.) The claim could be a claim for setoff, or it could be a claim for "money had and received," because those are the first four words of the counterclaim. Defendants also assert the affirmative defense of recoupment based on the same set of facts. (Answer 4.) The parties do not appear to dispute that McCallum's entities owe money to BH2M, but the amount is not fixed as of yet and McCallum's personal liability is disputed. (S.S.M.F. ¶¶ 25-28; O.S.M.F. ¶¶ 25-28.)

Defendants' second counterclaim relates to the conveyance of a parcel of land that was part of the Juniper Knoll subdivision in Saco, and appears to be either an intentional or negligent misrepresentation claim. McCallum owned a portion of the land underlying Lot 12 of the subdivision in question. (S.S.M.F. ¶¶ 30, 32; O.S.M.F. ¶¶ 30, 32.) McCallum contends that Berry told him in September or October of 2009 and again in the fall of 2010 that all the land in the subdivision had to be held in one name for it to be approved by the City of Saco, but Berry denies making such a statement. (S.S.M.F. ¶¶ 34-36; O.S.M.F. ¶¶ 34-36.) In August of 2010, however, the Saco City Planner told McCallum via e-mail that not all the property had to be held in the same name. (S.S.M.F. ¶ 37; O.S.M.F. ¶ 37.) McCallum transferred his interest in Lot 12 to Mezoian Development, LLC (Mezoian) in November of 2010.[7] (S.S.M.F. ¶ 40; O.S.M.F. ¶ 40.) McCallum contends he had an oral agreement with Mezoian that Mezoian would convey Lot 12 back to him after approval, but Mezoian has refused to do so. (S.S.M.F. ¶¶ 43-45; O.S.M.F. ¶¶ 43-45.) McCallum contends that he relied on Berry's misrepresentation to the effect that the underlying property had to be in one ownership to secure the subdivision's approval,. (S.S.M.F. ¶ 46; O.S.M.F. ¶ 46.)

---

[7] Although not explicit in the statements of material facts, presumably Mezoian is the entity developing the subdivision in Saco with McCallum.

3

Defendants' third counterclaim is for professional negligence related to road specifications in the Green Acres Court subdivision in Waterboro. Defendants assert that the road specifications created by BH2M for the subdivision far exceed the requirements of the Waterboro road ordinance. (S.S.M.F. ¶ 49; O.S.M.F. ¶ 49.) Waterboro, LLC, owns the land underlying the Green Acres Court subdivision; McCallum's corporation Mountain Heir Financial Corp. (MHFC) is a 29% owner of Waterboro, LLC. (S.S.M.F. ¶¶ 51-52; O.S.M.F. ¶¶ 51-52.) Neither McCallum nor MHFC is the manager of or can control Waterboro, LLC; neither McCallum nor MHFC paid BH2M directly for the road design at Green Acres Court. (S.S.M.F. ¶¶ 53-54; O.S.M.F. ¶¶ 53-54.) Although the disputed road has not yet been built, Defendants assert that MHFC will incur between $100,000 and $150,000 in unnecessary construction costs if Waterboro will not allow revision to the road specifications. (S.S.M.F. ¶¶ 50, 55; O.S.M.F. ¶¶ 50, 55.)

## DISCUSSION

### I. STANDARD OF REVIEW

Pursuant to M.R. Civ. P. 56(c), a moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, . . . show that there is no genuine issue as to any material fact set forth in those statements and that [the] party is entitled to a judgment as a matter of law." A party wishing to avoid summary judgment must present a prima facie case for each element of a claim or defense that is asserted. *See Reliance Nat'l Indem. v. Knowles Indus. Svcs.*, 2005 ME 29, ¶ 9, 868 A.2d 220. At this stage, the facts in the summary judgment record are reviewed "in the light most favorable to the nonmoving party." *Lightfoot v. Sch. Admin. Dist. No. 35*, 2003 ME 24, ¶ 6, 816 A.2d 63.

4

"If material facts are disputed, the dispute must be resolved through fact-finding." *Curtis v. Porter*, 2001 ME 158, ¶ 7, 784 A.2d 18. A factual issue is genuine when there is sufficient supporting evidence for the claimed fact that would require a fact-finder to choose between competing versions of the facts at trial. *See Inkel v. Livingston*, 2005 ME 42, ¶ 4, 869 A.2d 745. "Neither party may rely on conclusory allegations or unsubstantiated denials, but must identify specific facts derived from the pleadings, depositions, answers to interrogatories, admissions and affidavits to demonstrate either the existence or absence of an issue of fact." *Kenny v. Dep't of Human Svcs.*, 1999 ME 158, ¶ 3, 740 A.2d 560 (quoting *Vinick v. Comm'r*, 110 F.3d 168, 171 (1st Cir. 1997)).

## II.     ANALYSIS

BH2M asserts it is entitled to judgment as a matter of law on each of Defendants' counterclaims. First, BH2M argues that the first counterclaim is an affirmative defense to BH2M's various claims for fees, rather than a counterclaim, and summary judgment should enter in its favor. Next, BH2M argues that Defendants have failed to comply with the pleading requirements of M.R. Civ. P. 9(b) on the misrepresentation counterclaim. In the alternative, BH2M argues that any reliance by the Defendants on Berry's statement was not reasonable as a matter of law. Finally, in addition to challenging Defendants' standing with respect to the claim for professional negligence, BH2M argues that Defendants cannot satisfy the element of causation. In addition, the Court addresses the ripeness of the professional negligence claim.

### A.     "Money had and received" or Setoff (Count I)

BH2M asserts that the first counterclaim is an affirmative defense to BH2M's various claims for fees, rather than a counterclaim, and summary judgment should enter in its favor. Although the nature of that counterclaim is not clear, the Defendants do not appear to be asserting a claim for "money had and received," which are the first four words of the

5

counterclaim. "Money had and received" is a restitutionary cause of action that disaffirms the existence of a contract in the first instance. *See Harmony Homes Corp. v. Cragg*, 390 A.2d 1033, 1035 (Me. 1978). The counterclaim does not challenge the existence of the various contracts, only the amount due on the contracts.

What the Defendants do appear to be asserting is that they are entitled to set off the overpayment against whatever else is owed to the Plaintiff. Defendants have already asserted the affirmative defense of recoupment. (Answer 4.) Setoff differs from recoupment in that recoupment is an affirmative defense for "a reduction of part of the plaintiff's damages because of a right in the defendant arising out of the same transaction." *Cheung v. Wu*, 2007 ME 22, ¶ 19, 919 A.2d 619 (quotation marks omitted). "A 'set-off' is a demand that the defendant has against the plaintiff arising out of a transaction extrinsic to the plaintiff's cause of action." *Inniss v. Methot Buick-Opel, Inc.*, 506 A.2d 212, 217 (Me. 1986)). Given that BH2M is seeking payment on numerous invoices for several different projects spanning a period of years, a claim of set off is perfectly appropriate.

For example, BH2M might not prove any money owed on the invoices that Defendants assert were overpaid, and Defendants might prove the overpayment on those same invoices. In that case, recoupment would not be applicable, but a setoff of the amount of overpayment against another invoices would be appropriate. If BH2M were to fail to prove it is owed anything, then there might be an affirmative award to one or both Defendants in the amount of an overpayment. In any event, the statements of material fact support a claim of setoff (S.S.M.F. ¶¶ 23-24; O.S.M.F. ¶¶ 23-24), and the Court will permit this claim to move forward.

6

B.     Misrepresentation (Count II)

As noted, it is unclear whether Defendants are asserting a claim for intentional or negligent misrepresentation because Defendants have made no statement with respect to Berry's state of mind. Accordingly, BH2M first argues that the fraud claim does not comply with the pleading requirements of M.R. Civ. P. 9(b) because it "does not state, with either particularity or generally, that the alleged misrepresentations by BH2M were made with malice, intention or knowledge of their falsity." (MSJ 13.) *See* M.R. Civ. P. 9(b) ("In all averments of fraud . . . , the circumstances constituting fraud . . . shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally.")

The statements of material fact to do not speak to Berry's state of mind other than to note: "Although it is unclear from the Counterclaim, Mark McCallum contends that BH2M was either fraudulent or negligent in representing that all the land in the proposed Juniper Knoll subdivision had to be in one name for approval." (S.S.M.F. ¶ 47; O.S.M.F. ¶ 47.) In such circumstances where fraud has not been pled sufficiently, summary judgment on behalf of the defendant is appropriate. *See Mitec Partners, LLC v. U.S. Bank Nat'l Ass'n*, 605 F.3d 617, 622-23 (8th Cir. 2010); *ETC Int'l, Inc. v. Curriculum Advantage, Inc.*, 272 F. App'x 139, 141 (3d Cir. 2008); *Darling v. W. Thrift & Loan*, 600 F. Supp. 2d 189, 195-96 (D. Me. 2009) (indicating summary judgment may be entered on a fraud claim based on insufficient pleading).

BH2M also argues that regardless of whether the claim is for fraudulent or negligent misrepresentation, each cause of action fails because of the lack of justifiable reliance, which is common to both causes of action. *See Flaherty v. Muther*, 2011 ME 32, ¶ 45, 17 A.3d 640 (listing elements of a fraud claim, including justifiable reliance); *Chapman v. Rideout*, 568 A.2d 829, 830 (Me. 1990) (setting out elements of a negligent misrepresentation claim, including

7

justifiable reliance). The basis for the misrepresentation claim is Berry's alleged statement to McCallum that in order to secure the subdivision's approval, the underlying property had to be in one ownership. (S.S.M.F. ¶ 46; O.S.M.F. ¶ 46.) Key to the issue of justifiable reliance is an e-mail that McCallum received from Saco's city planner that stated the property for the subdivision did not need to be in one ownership. (S.S.M.F. ¶ 37; O.S.M.F. ¶ 37.) Notwithstanding this e-mail, Defendants assert that Berry told McCallum that the subdivision had to be in unitary ownership for the subdivision to be approved and in reliance on this statement, McCallum transferred his interest Lot 12 to Mezoian. (S.S.M.F. ¶¶ 40, 46; O.S.M.F. ¶¶ 40, 46.)

"Reliance is unjustified only if the plaintiff knows the representation is false or its falsity is obvious." *Dowling v. Bangor Hous. Auth.*, 2006 ME 136, ¶ 16, 910 A.2d 376 (quoting *Francis v. Stinson*, 2000 ME 173, ¶ 38, 760 A.2d 209). In his deposition, BH2M asserts that McCallum stated that he knew that Berry's statement was inaccurate when it was said. (S.S.M.F. ¶ 39.) In reviewing the deposition, and putting the cited portions in context, McCallum does admit that he received the e-mail from the City but also states that at a meeting with Mezoian and Berry of BH2M: "And we went there, and that's when Les [Berry] explained to everybody, and Bryce and me and Mike, that it really had to go all in one name for the DEP purposes because the site review law was a lot easier and the drainage could be done easier . . . ." (BH2M Exh. D at 268:1-5.)

BH2M focuses on the element of reliance, asserting that either the subdivision had to be in single ownership, or it did not. Viewed in the light most favorable to Defendants, however, both the city planner's statement *and* Berry's statement could be true: the subdivision was not required to be in one ownership, but the approval process would be easier if it was. Thus, there is an additional issue of falsity.

8

In either case, Defendants' misrepresentation claim must fail. If Defendants are asserting that the misrepresentation was that the subdivision was *required* to be in single ownership, then the e-mail from the City makes Defendants' reliance on such a statement unjustifiable. If Defendants are asserting that the misrepresentation was that putting the subdivision in single ownership would make the approval process *easier*, then Defendants have failed to show how that statement was false when it was made. Thus, the Court enters summary judgment in favor of BH2M on the misrepresentation claim both because it has been insufficiently pled and because Defendants have failed to make out all the essential elements of the cause of action in opposition to the motion for summary judgment. *See Reliance Nat'l Indem.*, 2005 ME 29, ¶ 9, 868 A.2d 220.

## C.    Professional Negligence (Count III)

At issue are both the justiciability of the professional negligence claim and the sufficiency of the claim. BH2M has raised the issue of Defendants' standing, but the Court also addresses the issue of ripeness.

### 1.    *Justiciability*

BH2M asserts Defendants do not have standing to assert the professional negligence claim because McCallum's corporation MHFC is a minority member in the Waterboro, LLC, who owns the underlying land of the subdivision and the actual client of BH2M. "Standing to sue means that the party . . . has sufficient personal stake in the controversy to obtain judicial resolution of that controversy." *Halfway House Inc. v. City of Portland*, 670 A.2d 1377, 1379 (Me. 1996). A claim for professional negligence requires the claimant to be injured by the acts of the defendant. *See Garland v. Roy*, 2009 ME 86, ¶ 19, 976 A.2d 940. Without particularized injury to a personal, property, or pecuniary interest, the claimant has no standing to bring the cause of action. *See Mortg. Elec. Registration Sys. v. Saunders*, 2010 ME 79, ¶ 7, 2 A.3d 289.

9

Here, Defendants admitted that neither McCallum nor MHFC 1) owns the underlying land of the subdivision; 2) paid for the design of the road in question; and 3) manages or controls the activities of Waterboro, LLC. (S.S.M.F. ¶¶ 51, 53-54; O.S.M.F. ¶¶ 51, 53-54.) The First Circuit has explained that

> [a] stockholder of a corporation does not acquire standing to maintain an action in his own right, as a shareholder, when the alleged injury is inflicted upon the corporation and the only injury to the shareholder is the indirect harm which consists in the diminution in value of his corporate shares resulting from the impairment of corporate assets. In this situation, it has been consistently held that the primary wrong is to the corporate body and, accordingly, that the shareholder, experiencing no direct harm, possesses no primary right to sue.
>
> . . . Actions to enforce corporate rights or redress injuries to the corporation cannot be maintained by a stockholder in his own name . . . even though the injury to the corporation may incidentally result in the depreciation or destruction of the value of the stock.

*In re Dein Host, Inc.*, 835 F.2d 402, 406 (1st Cir. 1987) (quotation marks omitted). There is no reason to think this rule would not be the same is Maine, but the issue of whether a minority member of an LLC can bring a cause of action in the member's own name on behalf of the LLC has not been addressed in Maine. Moreover, it is not clear to the Court that Defendants do not have a cause of action based on their own injury because BH2M is seeking payment on two invoices related to the Waterboro project that are directed to McCallum and MHFC.[8]

Nevertheless, because there is no evidence that the road that is the subject of Defendants' professional negligence claim has been constructed, there is an issue of whether this claim is ripe. The ripeness doctrine prevents "judicial entanglement in abstract disputes" and avoids "premature adjudication." *Marquis v. Town of Kennebunk*, 2011 ME 128, ¶ 18, 36 A.3d 861 (quotation marks omitted). "For a case to be ripe there must be a genuine controversy and a concrete, certain, and immediate legal problem." *See id.* The primary

---

[8] This raises the issue of whether two of the invoices regarding the Waterboro project are correctly directed to McCallum and MHFC for payment if, as BH2M contends, Waterboro, LLC was the client.

10

concerns in a ripeness determination are "the fitness of the issue for judicial decision and the hardship to the parties of withholding court consideration." *Waterville Indus. Inc. v. Fin. Auth. of Me.*, 2000 ME 138, ¶ 22, 758 A.2d 986 (quotation marks omitted).

The summary judgment record reveals that the professional negligence claim is not yet fit for decision because neither McCallum nor MHFC has been damaged. Tellingly, Defendants have admitted that *if* Waterboro will not permit a revision of the road specifications, *then* MHFC will incur $100,000 to $150,000 in additional costs. (S.S.M.F. ¶ 50; O.S.M.F. ¶ 50.) There is no evidence to suggest that such a revision has been sought or has been denied by Waterboro. Because the injury to Defendants, if any, is still an abstract concept, adjudication of this dispute would be premature. *See Marquis*, 2011 ME 128, ¶ 18, 36 A.3d 861.

Moreover, there would be no hardship to either party in not adjudicating the dispute because Defendants could bring this claim in a separate action. Although two of the invoices for which BH2M is seeking payment appear to relate to the Waterboro project that forms the basis of the professional negligence claim, the counterclaims are permissive, not compulsory. M.R. Civ. P. 13(a)(1) distinguishes between the time a pleading is served and the accrual of a counterclaim in determining whether a counterclaim is compulsory. Thus, to the extent a claim is not ripe at the time a pleading is served but ripens during the pendency of the suit, the claim would be only a permissive counterclaim and not a compulsory counterclaim. *See* M.R. Civ. P. 13(b). Because the claim is not fit for adjudication and because no hardship will result to the parties in withholding the court's judgment, the Court concludes the claim is not ripe and non-justiciable.

11

## 2. *The Merits*

Even if the Court were to consider the merits of the professional negligence counterclaim, the outcome would be no different for Defendants. To prove professional negligence, "a plaintiff must prove by a preponderance of the evidence, that the defendant breached a duty owed to the plaintiff to conform to a certain standard of conduct, and that the breach of that duty proximately caused an injury or loss to the plaintiff." *Garland*, 2009 ME 86, ¶ 19, 976 A.2d 940. BH2M asserts that the claim must fail because Defendants have failed to put forth any expert testimony and thus have not met the causation element. A professional negligence plaintiff must typically provide expert testimony, even at summary judgment, to prove causation because a jury does not have the specialized knowledge of whether or not an alleged instance of negligence proximately caused the plaintiff's damages. *See, e.g., Corey v. Norman, Hanson & DeTroy*, 1999 ME 196, ¶¶ 13-14, 742 A.2d 933. "[E]xpert testimony," however, "may not be necessary where the negligence and harmful results are sufficiently obvious as to lie within [the] common knowledge" of the jury. *Searles v. Trs. of St. Joseph's College*, 1997 ME 128, ¶ 10, 695 A.2d 1206 (quotation marks omitted).

Defendants have indeed failed to provide any expert testimony on the issue of causation, which is a fatal flaw. The deficiencies in the statements of material fact are much broader, however. Notably, the statements of material fact are devoid the duty owed to Defendants by BH2M or any delineation of the standard of care, although presumably the duty was breached by exceeding the specifications of the road ordinance. (*See* S.S.M.F. ¶ 49; O.S.M.F. ¶ 49.) Moreover, the same flaw that renders this case unripe, i.e. lack of damage, also dooms the negligence claim. Without any actual damage, or even an allegation of injury, there can be no professional negligence. Accordingly, summary judgment will enter in favor of BH2M on this count.

12

## CONCLUSION

Based on the foregoing, the Court GRANTS summary judgment in favor of BH2M and against Defendants on Counts II and III of Defendants' Counterclaim, and DENIES summary judgment as to Count I of the Counterclaim.

Pursuant to M.R. Civ. P. 79(a), the clerk is instructed to incorporate this order into the docket by reference.

Date: March 26, 2013

A.M. Horton
Business and Consumer Court

Entered on the Docket: 3·26·13
Copies sent via Mail __ Electronically ✓

13

**BCD-CV-12-01**
**Berry Huff McDonald**           v.           **Mark McCallum, et al**

Christopher Berry, Esq.
Law Office of Judith Berry
28 State Street
Gorham, ME

Jason Donovan, Esq.
Rebecca Farnum, Esq.
Thompson & Bowie
P.O. Box 4630
Portland, ME

James Audiffred, Esq.
Law Office of James L. Audiffred
374 Main Street
P.O. Box 1005
Saco, ME